378 A.2d 1282

COMMONWEALTH of Pennsylvania

v.

84–QT. BTLS. BIANCO DiVERONA WINE et al., in possession of Gerald Hildebrandt, registered owner.

Appeal of COMMONWEALTH of Pennsylvania, Pennsylvania LIQUOR CONTROL BOARD.

Superior Court of Pennsylvania.

Submitted June 15, 1976.

Decided Oct. 6, 1977.

Harry Bowytz, Chief Counsel, J. Leonard Langan, Assistant Attorneys General and Robert P. Kane, Attorney General, Harrisburg, for appellant.

Harvey W. Robbins, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from a decision of the Court of Common Pleas of Philadelphia denying a petition filed by the Pennsylvania Liquor Control Board for the forfeiture of 86 bottles of wine.

1

Initially, on July 23, 1975, this appeal was filed in the Commonwealth Court. However, on January 27, 1976, the

Commonwealth Court ordered the appeal transferred to this court.

This court's appellate jurisdiction is set forth in Section 302 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. III, 17 P.S. § 211.302:

The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, *except such classes of appeals as are by any section of this act within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.* (Emphasis added.)

"[T]he exclusive jurisdiction of . . . the Commonwealth Court" is set forth in Section 402 of the Appellate Court Jurisdiction Act, *supra,* 17 P.S. § 211.402, which provides in part that:

The Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases . . .

(1) *All civil actions or proceedings to which the Commonwealth* or any officer thereof, acting in his official capacity, *is a party* except actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court . . .

(Emphasis added.)

Section 602 of the Liquor Code, Act of April 12, 1951, P.L. 90, 47 P.S. § 6–602, which sets forth the procedure in forfeiture proceedings, provides:

The proceedings for the forfeiture or condemnation of all property shall be in rem, in which the Commonwealth shall be the plaintiff and the property the defendant . . . . .

■ From these several statutory provisions it is apparent that this appeal was initially properly filed in the Commonwealth Court. It may also be noted that the Commonwealth

Court has previously exercised its exclusive jurisdiction to hear an appeal from an order in a forfeiture proceeding under Section 602 of the Liquor Code. *See Commonwealth v. One 1973 Chevrolet/Pickup Truck, etc.,* 20 Pa.Cmwlth. 300, 342 A.2d 153 (1975).

### 2

■ The conclusion that the appeal was initially properly filed in the Commonwealth Court does not settle the question whether this court should hear the appeal or transfer it back to the Commonwealth Court.

Section 503 of the Appellate Court Jurisdiction Act, *supra,* 17 P.S. § 211.503, provides:

(a) The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the hearing of the appeal, or within such earlier time as may be specified by general rule or rule of court, shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this act, or of any general rule adopted pursuant to section 505 of this act, vesting jurisdiction of such appeal in another appellate court.

(b) If an appeal or other matter is erroneously taken to or brought in a court which does not have jurisdiction of the appeal or other matter, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof, at the cost of the appellant, petitioner or plaintiff, to the proper court of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in that court on the date erroneously filed in the other court.

(c) The Superior Court and the Commonwealth Court shall have power pursuant to general rules, on their own motion or upon petition of any party, to transfer any appeal to the other court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion.

We considered these provisions in our recent opinion in *Valley Forge Industries, Inc. v. Armand Construction, Inc. and United Surety and Financial Guarantee Company,* 248 Pa.Super. 53, 374 A.2d 1312 (1977):

> Prior to the adoption of the Appellate Court Jurisdiction Act, it was settled law that parties could not stipulate to appellate court jurisdiction. . . . Furthermore, jurisdiction could not be conferred through approval of such agreements by the court. . . . However, when the legislature established the separate jurisdictions of the Supreme Court, the Commonwealth Court, and the Superior Court, it recognized that two distinct problems could arise. First, if a party inadvertently or unwittingly appealed to the wrong court, his appeal time might run before the error was discovered and he might lose his right of appeal. . . . Second, the legislature sought to protect appellate court decisions from collateral attack in those cases where neither party objected to jurisdiction. . . . To avoid these two pitfalls, the legislature provided a flexible and efficient means of transferring cases from the court to which appeal was taken to the court to which the legislature allocated subject matter jurisdiction. Appellate Court Jurisdiction Act, *supra*; 17 P.S. § 211.-503(b) & (c). At the same time, it reserved to the court to which the appeal was erroneously taken the discretionary power to hear and decide the merits of the appeal when no jurisdictional objection is raised. Appellate Court Jurisdiction Act, *supra*; 17 P.S. § 211.503(a). . . .
>
> 248 Pa.Super. at 59, 374 A.2d at 1315. (citations omitted.)

In *Valley Forge* we declined to exercise our discretionary power to hear an appeal within the jurisdiction of the Commonwealth Court. While recognizing that the parties would suffer additional expense and delay, we nevertheless concluded that we should transfer the appeal to the Commonwealth Court because the question involved was one "of important public policy affecting existing and future bonds on thousands of public works projects," and the law was

unsettled. In these circumstances, it seemed the better course to defer to the Commonwealth Court. We noted:

> [T]he legislature has established a division of labor among the appellate courts of this Commonwealth, in part, to distribute the work so that the judicial resources of no one court become overburdened. If we too freely accept appeals concerning subject matter allocated to another court, we disrupt the legislatively ordained division of labor.

248 Pa.Super. at 61, 374 A.2d at 1316.

In concluding, however, we pointed out that

> we will be required to examine each potential transfer on a case-by-case basis. There may be cases in which factors weigh more heavily against transfer.

*Id.*

The present case is one in which the factors do "weigh more heavily against transfer." First, the case has already been transferred once, the parties thereby being subjected to additional expense and delay. Second, the subject matter—a forfeiture proceeding under Section 602—is one over which this court had jurisdiction until the enactment of the Appellate Court Jurisdiction Act, *supra.* Act of June 24, 1895, P.L. 212, § 7(a), 17 P.S. § 182, *as amended by* Act of Aug. 14, 1963, P.L. 819, § 1 (*repealed* 1970). *See Commonwealth v. One 1959 Chevrolet Impala Coupe,* 201 Pa.Super. 145, 191 A.2d 717 (1963); *Commonwealth v. One 1939 Cadillac Sedan,* 158 Pa.Super. 392, 45 A.2d 406 (1946); *Commonwealth v. One Dodge Sedan,* 141 Pa.Super. 34, 14 A.2d 600 (1940). *Cf. Commonwealth v. Davis,* 163 Pa.Super. 224, 60 A.2d 552 (1948). Third, as a consequence of this court's prior jurisdiction of the subject matter, the question presented involves the application of well-settled principles of law, which have been cited with approval by the Commonwealth Court · in *Commonwealth v. One 1973 Chevrolet Pickup/Truck, etc., supra* ; the possibility of developing two conflicting lines of authority is therefore minimal. And fourth, this is not a situation where to abide by "the legislatively ordained division of labor" would serve to economize

judicial resources. For these reasons we have concluded that we should consider the merits of this appeal.

### 3

■ The facts are not in dispute. On November 8, 1974, Frank Healey, an enforcement officer for the Pennsylvania Liquor Control Board, observed Gerald Hildebrandt purchase a quantity of wine at the Liquor Fair Store in Cherry Hill, New Jersey, and place it into the trunk of a 1970 Pontiac. Mr. Healey followed Mr. Hildebrandt across the Tacony-Palmyra Bridge, and stopped him at State and Levick Streets in Philadelphia. When the trunk of the Pontiac was opened, Mr. Healey found 86 bottles of wine, which he confiscated under Section 491(2) of the Liquor Control Act, 47 P.S. § 4–491(2), which provides in part:

It shall be unlawful

.    .    .    .    .

(2) For any person, except a manufacturer or the board or the holder of a sacramental wine license or of an importer's license, to possess or transport any liquor or alcohol within this Commonwealth which was not lawfully acquired prior to January first, one thousand nine hundred and thirty-four, or has not been purchased from a Pennsylvania Liquor Store or in accordance with the board's regulations. The burden shall be upon the person possessing or transporting such liquor or alcohol to prove that it was so acquired  .  .  . .

On January 16, 1975, the Liquor Control Board filed a petition for forfeiture of the wine. Sections 601 and 602 of the Liquor Control Act, 47 P.S. §§ 6–601 and 6–602. A hearing on the petition was set for February 13. When Mr. Hildebrandt failed to appear, the court entered an order granting the Commonwealth's petition. However, on May 13, Mr. Hildebrandt filed a petition to open the order. The court granted the petition and ordered a rehearing on the petition for forfeiture. At the rehearing it appeared that Mr. Hildebrandt's defense to the petition for forfeiture was that he was a professional wine taster and that the wines

seized were not sold in the Pennsylvania State Stores. The court found this defense sufficient and refused the petition for forfeiture, stating in its opinion:

> It is clear that the intendment of the Pennsylvania Liquor Code was not to penalize someone in the position of this respondent who, in the exercise of his professional pursuit, cannot obtain certain rare and exotic wines within this Commonwealth. In this unique situation this Court should and must render a just and equitable decision and this, in our opinion, we have done.
>
> Slip Opinion at 3.

This conclusion was error. Section 602 of the Liquor Control Act provides in pertinent part that:

> In the event such claimant shall prove by competent evidence to the satisfaction of the court that said liquor . . . was lawfully acquired, possessed and used, then the court may order the same returned or delivered to the claimant; *but if it appears that said liquor . . . was unlawfully possessed or used the court shall order the same destroyed, delivered to a hospital, or turned over to the [Liquor Control Board] . . .*
>
> (Emphasis added.)

Under this provision the question that the lower court had to decide was whether the "liquor [wine] . . . was lawfully . . . possessed . . . [or] unlawfully possessed." If from the evidence it had appeared that the wine was lawfully possessed, the court would have had discretion to decide whether to order it returned to Mr. Hildebrandt as the claimant. However, the court is given no such discretion "if it appears that said [liquor] . . . was unlawfully possessed." *See Commonwealth v. One 1959 Chevrolet Impala Coupe, supra,* 201 Pa.Super. at 148–149, 191 A.2d at 718; *Commonwealth v. Davis, supra,* 163 Pa.Super. at 228, 60 A.2d at 554. Here it is clear that the wine was unlawfully possessed. As has been mentioned, the wine was confiscated under Section 491(2) of the Liquor Control Act, which has been quoted *supra.* Under that section there are certain exceptions to the general prohibition against possessing li-

quor not purchased from a Pennsylvania Liquor Store: "a manufacturer or the board or the holder of a sacramental wine license or of an importer's license." It does not appear that Mr. Hildebrandt fit within any of these exceptions.

Accordingly the order of the lower court is reversed and it is hereby ordered that the 86 bottles of wine be forfeited to the Commonwealth for disposition by the Board in accordance with Section 603 of the Liquor Code, 47 P.S. § 6–603.

JACOBS and HOFFMAN, JJ., would re-transfer the case to Commonwealth Court.